IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:21-CV-00068-KDB-DSC

| | |
|---|---|
| ROSALIND RICHMOND, | |
| Plaintiff, | |
| v. | **ORDER** |
| MEDICREDIT, INC., | |
| Defendant. | |

**THIS MATTER** is before the Court on the parties' cross motions for summary judgment Choose an item. (Doc. Nos. 40, 44). The Court has carefully reviewed these cross motions and considered the parties' briefs and exhibits in support and in opposition. In this action, Plaintiff Rosalind Richmond contends that defendant Medicredit, Inc. violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. by reporting her alleged debts to consumer reporting agencies without disclosing that she disputed the debts and failing to properly verify the debts after her statutory request for verification. For the reasons discussed below, the Court will **GRANT in part** and **DENY in part** Medicredit's motion. The Court will also **DENY** Richmond's motion. The Court finds that neither party is entitled to summary judgment with respect to whether Medicredit noted Richmond's dispute when it reported her alleged debts but that Medicredit is entitled to summary judgment with respect to Richmond's verification claim.

I.  LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)); *see*

1

*United States, f/u/b Modern Mosaic, LTD v. Turner Construction Co., et al.,* 946 F.3d 201, 206 (4th Cir. 2019). A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Vannoy v. Federal Reserve Bank of Richmond*, 827 F.3d 296, 300 (4th Cir. 2016) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions, or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 522 (4th Cir. 2003). "The burden on the moving party may be discharged by 'showing' ... an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," *Id.* at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id.* at 324. "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar,* 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted).

In determining if summary judgment is appropriate, "courts must view the evidence in the light most favorable to the nonmoving party and refrain from weigh[ing] the evidence or mak[ing] credibility determinations." *Variety Stores*, 888 F.3d at 659 (internal quotation marks omitted) (quoting *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017)); *see Modern Mosaic* at *2. "Summary judgment cannot be granted merely because the court believes that the movant will

prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015) (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)).

However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (internal citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Also, the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *Id.* If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Id.* at 249-50.

In the end, the question posed by a summary judgment motion is whether the evidence as applied to the governing legal rules "is so one-sided that one party must prevail as a matter of law." *Id.* at 252.

## II. FACTS AND PROCEDURAL HISTORY

Medicredit is in the business of collecting debts allegedly owed to hospitals and doctors. Some time prior to September 15, 2020, Medicredit began efforts to collect from Richmond two alleged debts of $172 that related to medical services provided by Novant Medical Group, Inc. (Novant) on January 10, 2019, and January 31, 2019. After noticing the Medicredit collection accounts on her credit report, Richmond called Novant directly to determine if she had any outstanding balances. (*See* Doc. No. 44-4 at p. 8). A representative of Novant informed Richmond that she had an outstanding balance of $25, which she paid while on the phone. Then, Novant confirmed that Richmond had "a zero balance." (*See* Doc. No. 44-3 at 3. ). Based on Richmond's

3

call with Novant she believed that Medicredit was incorrectly reporting medical debts on her credit report, which prompted her to dispute the debts in question. (Doc No. 42 at 2).

On September 15, 2020, Richmond disputed the two $172 debts on her credit report through the Consumer Financial Protection Bureau (CFPB). Richmond's complaint stated that she "received an unexpected collection update on [her] credit bureau reports of a 'duplicate' collection of $172 from Medicredit. (Doc. No. 44-5 at p. MC0006). Richmond's Experian credit report was updated four days later without any indication that the debts were disputed. (*Id.*). On September 23, 2020, Medicredit responded to Richmond's complaint explaining that it "conducted a thorough investigation" and determined that the debts were not duplicates of one another. (Doc. No. 45-3 at p. MC0008). Despite Richmond's complaints and communications, as of November 1, 2020, Richmond's Experian credit report still listed the two $172 Medicredit collection amounts without marking them as disputed by the consumer. (*See* Doc. No. 44-5).

Notwithstanding the credit report, Medicredit contends that it marked Richmond's debts as disputed and points to an excel spreadsheet prepared by its vendor which lists Richmond's debts, and shows an "XB" next to them, a recognized signal that the debts are disputed.[1] (See Doc. No. 44-6). However, Medicredit's spreadsheet is undated, making it impossible to tell when the debts were marked as disputed. (*See* Doc. No. 44-7, at p. 85, ln. 9-12). Moreover, a witness for Medicredit stated that the Excel spreadsheet was only generated "because of this lawsuit." (*Id.* at p. 82, ln. 1-14).

---

[1] XB indicates 'Account information disputed by consumer under the Fair Credit Reporting Act.' *Wood v. Credit One Bank*, 277 F. Supp.3d 821, 836 (E.D. Va. 2017).

4

Not only did Richmond dispute the debts in her complaint, but she also sought verification that the debts belonged to her.[2] Included in the complaint Richmond submitted on September 15, 2020, was a request for Medicredit "to validate that this unpaid debt belongs to me." (Doc. No. 45-3 at p. MC0007). On September 23, 2020, Medicredit responded to Richmond's verification request with copies of the underlying bills substantiating the dates of service and the amounts due. (*Id.* at MC0008). Richmond acknowledged in her deposition that she received the billing statements verifying the two $172.00 debts. (Doc. No. 45-1 at pp. 13:18-15:18).

However, included with Medicredit's verification of the debts, was a medical consent form by someone other than Richmond. Doc. No. 41 at 3. Medicredit contends that this error was inadvertent. *Id.* Nonetheless, Medicredit's erroneous inclusion of the unrelated medical consent form prompted Richmond to submit another complaint through the CFPB on September 28, 2020. In that second complaint she stated, "I just realized that Medicredit sent a misrepresentation to validate a debt not due…this debt belongs to someone else because I am not the person listed on the consent that Medicredit provided." (Exhibit A). In response, on October 1, 2020, Medicredit sent letters to Richmond confirming that it had "reviewed all relevant information provided by [Richmond] and conducted an investigation with respect to the disputed information" and "determined that the balance on the account is accurate and your responsibility." (Doc. Nos. 45-4, 45-5). After this verification, Medicredit continued to attempt collection of the debts on October 21, 2020.[3]

---

[2] 15 U.S.C. § 1692g(b) requires, upon timely request, that a debt collector obtain "verification of the debt" and mail same to the consumer.

[3] See Doc. No. 44-10 in which the last row of the call history file reflects a 47 second phone call made to Ms. Richmond on October 21, 2020, more than one month after her first complaint on September 15, 2020.

5

Richmond filed this lawsuit on April 28, 2021, alleging that Medicredit failed to list the two $172 collection accounts as "disputed by consumer" and failed to properly verify through the CFPB that the collection accounts were Richmond's personal liabilities in violation of FDCPA. Now before the Court are the parties' cross motions for summary judgment which have been fully briefed and are now ripe to be decided.

### III. DISCUSSION

Medicredit makes two arguments in support of its motion for summary judgment: (1) Richmond has allegedly failed to provide competent evidence to show that Medicredit reported her debts to CRAs as undisputed after she disputed them and (2) Medicredit properly verified the debts. Doc. No. 41 at 9. Similarly, Richmond's motion for summary judgment alleges that Medicredit failed to report that she had disputed the alleged debts and that Medicredit attempted to validate her debt with the wrong debtor information. Doc No. 44 at 24. Each issue is addressed below.

#### A. Medicredit's Alleged Failure to Report the Debts as Disputed

The Court finds that there is a genuine issue of material fact as to whether Medicredit reported Richmond's debts as disputed to the credit reporting agencies ("CRAs"). The FDCPA protects consumers from certain unfair debt collection practices. *See* 15 U.S.C. § 1692(a); *United States v. Nat'l Fin. Servs., Inc.,* 98 F.3d 131, 135 (4th Cir. 1996). A debt collector may not "communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). "Communication" is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium," *id.* § 1692a(2), and encompasses communications with CRAs. *See, e.g., Wilhelm v. Credico, Inc.,* 519 F.3d 416, 417–18 (8th Cir. 2008); *Brady v.*

6

*Credit Recovery Co.*, 160 F.3d 64, 66–67 (1st Cir. 1998); *King v. Asset Acceptance, LLC,* 452 F.Supp.2d 1272, 1282 (N.D.Ga.2006); *O'Fay v. Sessoms & Rogers, P.A.*, No. 5:08-CV-615-D, 2010 WL 9478988, at *7 (E.D.N.C. Feb. 9, 2010). "When [Medicredit] received notice in September 2020 that Richmond disputed her debt, [Medicredit] had two choices: not communicate with credit reporting agencies about the debt or communicate with credit reporting agencies about the debt and report that [Plaintiff] disputed the debt." *O'Fay*, No. 5:08-CV-615-D, 2010 WL 9478988, at *8.

Although the Fourth Circuit has yet to decide if a credit report can be evidence of the absence of the reporting of a disputed debt sufficient to avoid summary judgment, *Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147 (9th Cir. 2009), is instructive. In *Gorman*, a bank moved for summary judgment on a similar FDCPA claim on the grounds that the plaintiff had failed to introduce sufficient admissible evidence to show that it failed to report a debt as disputed to CRAs. *Id.* at 1164. The Ninth Circuit denied the defendant's motion after finding that the plaintiff's credit reports contained no notice of dispute, and the dispute verification form that the bank sent to the CRAs "contained no notice that the debt was disputed…." *Id.* at 1164-65. The court concluded that this evidence was sufficient to create an issue of fact as to whether the defendant failed to inform the CRAs that the plaintiff disputed the debt. *Id.* at 1165.

Like the plaintiff in *Gorman*, Richmond has shown that her Experian credit report contains no notice that she disputed the debts.[4] Moreover, Medicredit's internal records show that the debts

---

[4] Medicredit argues that the Court should not consider Richmond's credit report because it is inadmissible hearsay. Hearsay is a statement that a party offers in evidence to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c)(2). Where a "report [is] admissible for a purpose other than the truth of the matter asserted, it falls outside the definition of hearsay set forth in Federal Rule of Evidence 801(c)." *Beasley v. Red Rock Fin. Servs., LLC*, 583 F. App'x 138, 143 (4th Cir. 2014). Here, Richmond's credit reports are not being offered to prove the truth of the

7

Case 5:21-cv-00068-KDB-DSC   Document 48   Filed 07/22/22   Page 7 of 11

reported to the CRAs did not contain any notation of "disputed by the consumer." (Doc. No. 44-11). Medicredit contends that the internal records cited by Richmond do not indicate that the debts were not reported as disputed. (Doc No. 43 at 4). However, the only evidence that Medicredit offers to show that it reported Richmond's debts as disputed is an undated excel spreadsheet (see Doc. No. 44-7 at p. 85, ln. 9-12), which was generated in anticipation of this lawsuit. (*Id.* at p. 82, ln. 1-14).

In sum, neither party offers direct evidence of what Medicredit did or did not report to the CRAs. Medicredit correctly points out that Richmond's credit reports are not definitive proof that Medicredit failed to report her debts as disputed, and Richmond concedes the same. Doc. No. 42. at 15. Nevertheless, the Court finds the Ninth Circuit's holding in *Gorman* persuasive and will consider the absence of a notation of Richmond's dispute in her credit report along with the lack of any dispute notation in the debts Medicredit reported to the CRAs in finding that there are genuine issues of material fact as to whether Medicredit informed the CRAs that Richmond disputed the debts in question. Therefore, both parties' motions for summary judgment with respect to Medicredit's reporting the debts as disputed will be denied.

### B. Medicredit's Alleged Failure to Verify the Debts

In addition to her claim that Medicredit failed to report her debts as disputed, Richmond claims that Medicredit violated the FDCPA by improperly verifying her debts. Doc. No. 42 at 18. Specifically, Richmond alleges that Medicredit used a false representation to verify her debts in violation of the FDCPA by including another patient's medical consent form in its response to her

---

matter asserted—whether Medicredit reported Richmond's debt as disputed—but instead to show "what is not contained in the credit reports that Richmond received from the credit bureaus upon her request." Doc No. 42 at 15. Because Richmond does not seek admission of the credit reports to prove the truth of the matter asserted, the evidence is not inadmissible hearsay. *See Gorman*, 548 F.3d at 1164.

CFPB complaint. Doc. No. 42 at 18. Richmond further contends that Medicredit violated the FDCPA by continuing to attempt collection for non-validated debts. Doc. No. 42 at 5. Medicredit argues in response that despite its accidental inclusion of another patient's medical consent form, it properly verified Richmond's debts. Doc. No. 41 at 7. The Court agrees with Medicredit on this issue.

A debt collector may not use the false representation of the character, amount, or legal status or any debt in connection with the collection of any debt. 15 U.S.C. § 1692e(2)(A). Nor may a debt collector use "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10). Section 1692f prohibits a debt collector from using unfair "means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Section1692f(b) provides that "if the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a)[5] that the debt is disputed…the debt collector shall cease collection of the debt...until the debt collector obtains verification of the debt or a copy of a judgment…and a copy of such verification or judgment…is mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(b). The "verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt." *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999).

Medicredit fulfilled the statutory requirements under §1692g for verifying a debt. Prior to its collection attempt on October 21, 2020, Medicredit sent Richmond copies of the underlying

---

[5] 15 U.S.C. § 1692e(a) requires a debt collector to send the consumer a written notice containing a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector.

bills from Novant, including the name and address of Richmond's original creditor. Moreover, Medicredit mailed letters to Richmond confirming that it had conducted an investigation with respect to Richmond's disputes and verified the debts were her responsibility. Richmond makes no mention of Medicredit's verification efforts in its opposition brief.

Instead, Richmond urges the Court to focus solely on Medicredit's inadvertent inclusion of another patient's medical consent form in its response to her verification request . Indeed, it is on this error that Richmond bases the entirety of her improper verification allegations. Yet, Richmond cites no authority to support the proposition that the erroneous inclusion of an unrelated document by a debt collector spoils an otherwise valid verification process. Medicredit's error did not render improper its verification efforts; rather, the undisputed facts show that before Richmond submitted her second dispute about the medical consent form, she had received copies of the billing statements from Novant confirming the debts belonged to her. (Doc. No. 45-1 at pp. 13:18-15:18).

Richmond argues that despite receiving copies of the billing statements which confirmed the debts belonged to her, she believed Medicredit had "sent a misrepresentation to validate a debt not due." However, the critical fact is that Medicredit's response to Richmond's verification request clearly verified that the debts were what Novant claimed was owed; and its accidental inclusion of another patient's medical consent form does not negate its otherwise valid verification. Therefore, Medicredit is entitled to summary judgment on Richmond's claim that Medicredit improperly verified Richmond's debts.

10

Case 5:21-cv-00068-KDB-DSC   Document 48   Filed 07/22/22   Page 10 of 11

## IV.   ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Plaintiff's Motion for Summary Judgment (Doc. No. 44) is **DENIED;**

2. Defendant's Motion for Summary Judgment (Doc. No. 40) is **GRANTED** as to Plaintiff's claim for improper verification, but otherwise **DENIED**.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: July 22, 2022

Kenneth D. Bell
United States District Judge